IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SCIVIC ENGINEERING AMERICA, INC., *Plaintiff* <br><br> -vs- <br><br> SPARK POWER CORP. and SPARK POWER (SOUTHWEST USA) CORP., *Defendants* | 5:21-CV-00572-XR |

**ORDER**

On this day, the Court considered the Defendant Spark Power Corp.'s motion to dismiss for lack of personal jurisdiction (ECF No. 6), Plaintiff SCIVIC Engineering America, Inc.'s response (ECF No. 15), and Defendant's reply (ECF No. 24). After careful consideration, the Court issues the following Order.

**BACKGROUND**

This lawsuit arises from a construction dispute over electrical work performed by Spark Power (Southwest USA) Corp. ("Spark Southwest") for SCIVIC Engineering America, Inc. ("SCIVIC"). On August 4, 2020, SCIVIC entered into a contract in the form of two purchase orders (the "Contract") with Spark Power Corp. ("Spark") to perform electrical installation work for the TMMTX American Toyota Project (the "Project") at Toyota's manufacturing plant in San Antonio, Texas. *See* ECF No. 1-4 at 8–24. SCIVIC, an engineering firm based in South Carolina, was a general contractor on the Project. Spark was SCIVIC's subcontractor. Spark Southwest is a wholly owned, indirect subsidiary of Spark Power Corp. ("Spark"), a Canadian corporation with its principal place of business in Ontario. ECF No. 6 at 1, 2. Spark provides integrated power solutions to industrial, commercial, and institutional markets across North America.

After a dispute over payment and the quality of services rendered, SCIVIC terminated its relationship with Spark Southwest on December 14, 2020. Spark Southwest filed a mechanic's and materialman's lien on the Project with the Bexar County Clerk (the "Lien") on March 15, 2021, for outstanding payments in the amount of $1,764,230.82. SCIVIC filed suit in April 2021 against Spark only in Texas state court, asserting causes of action for breach of contract, breach of warranty, and an invalid and fraudulent lien. *See* ECF No. 1-3 at 4–5. SCIVIC filed an amended petition in May 2021 naming both Spark and Spark Southwest as defendants, and alleging that Spark "and/or" Spark Southwest breached the Contract and fraudulently recorded the lien without distinguishing between them. *See* ECF No. 1-4 at 4–5. Spark Southwest removed the action to federal court on the basis of diversity jurisdiction on June 16, 2021. See ECF No. 1.

Spark now moves to dismiss SCIVIC's claims against it, arguing that the Court lacks both general and specific personal jurisdiction over Spark. In support of its motion, Spark has submitted the declarations from Richard S. Jackson ("Jackson Decl."), Spark's President and Chief Executive Officer, ECF No. 6-1. According to Jackson, Spark (1) does not have any offices or employees, agents, or representatives in Texas; (2) does not maintain a registered agent on whom service of process can be made in Texas; (3) does not rent, own, or possess any real or personal property in Texas; (4) does not maintain a telephone listing in Texas or have a mailing address or post office box in Texas; (5) does not maintain a bank account or pay franchise taxes in Texas; (6) does not guarantee any debts owed to Texas residents or companies; (7) is not registered to do business in Texas and does not have a certificate of authority to conduct business in Texas; and (8) does not operate, conduct, engage in, or carry on any general course of business or business venture in Texas. *Id.* at 1–2.

Indeed, according to Jackson, Spark's only connection to Texas is through one or more of its indirect wholly owned subsidiaries that have independently been registered to conduct business in Texas, including Spark Southwest—a Delaware corporation formed in September 2018—which first registered to transact business in Texas in May 2019. *Id.* at 2. Jackson asserts that the purchase order forming the Contract mistakenly listed "Spark Power Corporation" as the selling party, rather than Spark Southwest. *Id.* He further asserts that Spark representatives did not negotiate or sign the Contract, nor did they perform any of the electrical work[1] described in the purchase orders or bill SCIVIC or Toyota for the work performed by Spark Southwest. *Id.*

The thrust of Spark's argument is that it is not a proper party to this action: "Spark's involvement here is the result of a simple misidentification [with Spark Southwest] which Defendants have since sought to correct." ECF No. 24 at 2. Spark is not subject to general jurisdiction, it argues, because it is not a Texas corporation and has "virtually no connection to Texas." *Id.* at 1. Likewise, it is not subject to specific jurisdiction because it does not have the requisite contacts with Texas arising out of Plaintiff's claims and, regardless of its contacts with Texas, that the exercise of personal jurisdiction over Spark would offend the traditional notions of fair play and substantial justice.

## DISCUSSION

**I.    Legal Standard**

There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Because the Texas long-arm statute extends to the

---

[1] Jackson further notes that while Spark Southwest is licensed by the Texas Department of Licensing and Regulation to provide the electrical services described in the purchase orders, Spark is not. ECF No. 6-1 at 2.

3

limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*[2] Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id.*

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Id.* In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

There is a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* at 271. If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Id.*

---

[2] Texas's long-arm statute specifically provides that, "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
 (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
 (2) commits a tort in whole or in part in this state; or
 (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
TEX. CIV. PRAC. & REM. CODE § 17.042.

4

The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). The relationship must arise out of contacts that the *defendant herself creates* with the forum state, not contacts between the plaintiff or third parties and the forum state and not the contacts the defendant makes by interacting with other persons affiliated with the state. *Id.* at 284. Thus, the minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* The plaintiff cannot be the only link between the defendant and the forum. *Id.*

General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19 (1984). The inquiry is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, the "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

To confer general jurisdiction, a defendant must have a business presence in the forum state. Access *Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Injecting a product, even in substantial volume, into a forum's "stream of commerce," without more, does not support general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987); *accord Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000). Advertising and marketing through national media is insufficient, as are isolated visits to a forum. *See Johnston*,

523 F.3d at 612; *Alpine View Co.*, 205 F.3d at 218; *Bearry*, 818 F.2d at 376. With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction"; they are unique and easily ascertainable, and afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims. *Daimler*, 571 U.S. at 128. It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

As the party seeking to invoke the power of the court, Plaintiff "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). "In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in [his] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software*, 688 F.3d at 219–20.

In determining whether a foreign company should be required to defend itself in a suit in Texas arising out of a contract between itself and a Texas company, each case must be decided on its own facts. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1066 (5th Cir. 1992). "[W]ith respect to interstate contractual obligations, parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). In other words, where the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he has availed himself of the privilege of conducting business

6

there. *Id.* at 476. In breach-of-contract disputes, the "purposeful availment" analysis turns on a "highly realistic" assessment of the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King*, 471 U.S. at 479).

## II. Analysis

### A. *General Jurisdiction*

Spark asserts that general jurisdiction does not exist here because Spark, a Canadian corporation, owns no property, business, or other assets in the State of Texas; has no offices, employees, or agents in the State of Texas; and maintains no business presence in the state. ECF No. 6. Nonetheless, SCIVIC asserts that general jurisdiction over Spark exists "due to the systematic and continuous contacts it has via its website with the State of Texas." ECF No. 15 at 16. In assessing whether a defendant's web presence can constitutionally support personal jurisdiction, courts look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). When looking to the nature and quality of the commercial activity of a website, the Court uses a sliding scale. *Id.*; *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (Fifth Circuit adopting and applying the *Zippo* analysis).

At the one end of the spectrum is a defendant that does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet." *Zippo*, 952 F. Supp. at 1124. In this situation, personal jurisdiction is proper. *See id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). At the other end of the spectrum is a defendant who merely establishes a passive

website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. *See id.* (citing *Bensusan Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997)). In the middle of the spectrum are websites that allow users to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D. Mo. 1996)).

Plaintiff notes that Spark's San Antonio-targeted webpage[3] specifically includes (1) a 24-hour service line; (2) a form to fill out to "connect" with Spark; and (3) the corporate information for Spark along with what it represents as Spark's office in San Antonio – 6131 Woodlake Center, San Antonio, Texas 78244.[4] While Spark's website likely falls within *Zippo*'s "middle ground," the Fifth Circuit has cautioned against using the *Zippo* test in the general jurisdiction analysis:

> While we deployed this sliding scale in *Mink v. AAAA Development LLC*, it is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.

*Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). *Zippo*'s scale "does more work with specific jurisdiction—the context in which it was originally conceived." *Id.* Given that SCIVIC's claims in this case are unrelated to the use of Spark's website, however, *Zippo* is not helpful to the Court in assessing whether specific jurisdiction exists.

---

[3] https://sparkpowercorp.com/san-antonio/
[4] Next to the address is the following: "Spark Power Corp. (TSX: SPG)(SPG.WT) is a leading independent provider of integrated power solutions to industrial, commercial, and institutional customers across North America. Spark Power's 750+ employees help deliver powerful solutions that reduce costs, make the environment a priority and empower our 6,500+ customers to transition to the grid of the future."

The Court concludes that SCIVIC has failed to allege facts sufficient to demonstrate that Spark engaged in such "continuous and systematic" contact with the State of Texas to vest this court with general jurisdiction over the defendants. *See Johnston*, 523 F.3d at 609.

### B. Specific Jurisdiction

Spark asserts that "[a]lthough Plaintiff's pleadings lump Spark and Spark Southwest together without meaningfully distinguishing between them, Spark . . . does not have the constitutionally-required minimum contacts with Texas to support personal jurisdiction." ECF No. 6 at 1. It appears to the Court that, to the extent that Plaintiff's pleadings "lump Spark and Spark Southwest together," they do so because the Spark entities themselves failed to "meaningfully distinguish" between Spark and Spark Southwest in their interactions with SCIVIC in the periods leading up to both the execution of the Contract and the filing of this action. As SCIVIC points out, it was Spark—not Spark Southwest—that signed the Contract to be performed in Texas and it was Spark—not Spark Southwest—that sent the first pre-lien notices of unpaid claims to SCIVIC in an attempt to avail itself of the protections afforded to lienholders under Texas law. *See* ECF No. 15 at 2–5, 10–13.

SCIVIC asserts that the business operations of Spark and Spark Southwest are sufficiently integrated that they should be considered a single entity for the purposes of this lawsuit. *See id.* at 7–8, 13–17. There does appear to be significant overlap between Spark, as the parent company, and Spark Southwest, as a subsidiary. Spark and Spark Southwest evidently share the same directors and officers, for example, and the same offices in Ontario, Canada. *Id.* at 7–8, 13–17. However, at this stage, the Court need not determine whether the alter ego doctrine and/or single business enterprise theory applies to exercise personal jurisdiction over Spark.

9

It is clear that the Court has personal jurisdiction over the parties to the Contract, which was signed in Texas and concerns services to be performed exclusively in Texas. See *Walden*, 571 U.S. at 283–84 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'") (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). At this stage of the litigation, however, it is not clear which Spark entity was a party to the Contract and is thus subject to personal jurisdiction in this forum. Accepting Plaintiff's uncontroverted allegations as true and resolving all conflicts between the jurisdictional facts in SCIVIC's favor, the Court concludes that Plaintiff has met its burden of establishing specific jurisdiction with respect to Spark. *Pervasive Software*, 688 F.3d at 219–20.

Exercising jurisdiction over Spark would not offend traditional notions of fair play and equal justice. When considering whether the exercise of personal jurisdiction over a nonresident defendant is unfair or unreasonable under the Due Process Clause, a court's assessment balances: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).  Minimal, if any, burden is placed on the nonresident defendant.  Texas has an interest in this contractual dispute, the interest of the interstate judicial system in the efficient administration of justice is served by having this case heard in this forum where the alleged breach occurred and the alleged deficient performance occurred.

## CONCLUSION

For the reasons herein, Defendant Spark Power, Inc.'s motion to dismiss for lack of personal jurisdiction (ECF No. 6) is **DENIED**.

It is so **ORDERED**.

SIGNED this August 26, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE