IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SCIVIC ENGINEERING AMERICA, INC.,<br>*Plaintiff*<br><br>-vs-<br><br>SPARK POWER CORP. and SPARK POWER (SOUTHWEST USA) CORP.,<br>*Defendants*<br><br>SPARK POWER (SOUTHWEST USA) CORP.,<br>*Counter-Plaintiff*<br><br>-vs-<br><br>SCIVIC ENGINEERING AMERICA, INC. and TOYOTA MOTOR MANUFACTURING, TEXAS, INC.,<br>*Counter-Defendants* | §§§§§§§§§§§§§§§§§§§§§§§§§§§<br><br>5:21-CV-00572-XR |

## ORDER

On this day, the Court considered Counter-Defendant SCIVIC Engineering America, Inc.'s motion to dismiss the counterclaims filed by Spark Power (Southwest USA) Corp. ("Spark Southwest") (ECF No. 26), joined by Counter-Defendant Toyota Motor Manufacturing, Texas, Inc. ("Toyota") (ECF No. 44), Spark Southwest's response (ECF No. 32), and the Counter-Defendants' reply (ECF No. 36). After careful consideration, the Court issues the following order.

## BACKGROUND

This lawsuit arises from a construction dispute over electrical work performed by Spark Southwest for SCIVIC Engineering America, Inc. ("SCIVIC"). On August 4, 2020, SCIVIC entered into a contract in the form of two purchase orders (the "Contract") with Spark Power Corp. ("Spark Canada") to perform electrical installation work for the TMMTX American Toyota Project (the "Project") at Toyota's manufacturing plant in San Antonio, Texas. *See* ECF No. 1-4

at 8–24. SCIVIC, an engineering firm based in South Carolina, was a general contractor on the Project, and Spark Canada was SCIVIC's subcontractor. Spark Southwest is a wholly owned, indirect subsidiary of Spark Canada, a Canadian corporation with its principal place of business in Ontario. ECF No. 6 at 1, 2. Spark Canada provides integrated power solutions to industrial, commercial, and institutional markets across North America.

After a dispute over payment and the quality of services rendered, SCIVIC terminated its relationship with Spark Southwest on December 14, 2020. Spark Southwest filed a mechanic's and materialman's lien on the Project with the Bexar County Clerk (the "Lien") on March 15, 2021, for outstanding payments in the amount of $1,764,230.82. SCIVIC filed suit in April 2021—against Spark Canada only—in Texas state court, asserting causes of action for breach of contract, breach of warranty, and an invalid and fraudulent lien. *See* ECF No. 1-3 at 4–5. SCIVIC filed an amended petition in May 2021 naming both Spark Canada and Spark Southwest as defendants, and alleging that Spark Canada "and/or" Spark Southwest breached the Contract and fraudulently recorded the Lien without distinguishing between them. *See* ECF No. 1-4 at 4–5.

On April 29, 2021, SCIVIC filed a Motion for Deposit into Registry in the state court action. In that motion, SCIVIC stated that while the parties litigate their disputes, SCIVIC intended to remove the Lien through the application of Texas Property Code § 53.160(b)(5), which provides that a party seeking to declare a lien claim invalid or unenforceable may file a motion to remove the claim or lien if "all funds subject to the notice of a claim to the owner and a notice regarding the retainage have been deposited in the registry of the court and the owner has no additional liability to claimant." As a result, SCIVIC requested an order authorizing SCIVIC to deposit $1,764,230.82, the amount claimed in the Lien, into the state court registry. On May 7, 2021, on order of the state court, SCIVIC deposited the funds into the state court registry.

Spark Southwest removed the action to federal court on the basis of diversity jurisdiction on June 16, 2021. *See* ECF No. 1. Upon the joint motion of the parties, the Court entered orders to transfer $1,486,564.16—the amount that Spark Southwest claimed to be owed after certain payments by SCIVIC—from the Bexar County registry into the registry of this Court and to remove the Lien pursuant to Texas Property Code § 53.160(b)(5). ECF Nos. 13, 25, 27, 30, 31, 38.

Shortly after removal, Spark Canada filed a motion to dismiss for lack of personal jurisdiction, arguing that it was not a proper party to this action. ECF No. 6. Spark Canada asserted that its involvement was limited to a misidentification in the purchase orders forming the Contract, which mistakenly listed "Spark Power Corporation" as the selling party, rather than Spark Southwest. *Id.* However, as SCIVIC pointed out, in addition to signing the Contract, it was Spark Canada—not Spark Southwest—that sent the first pre-lien notices of unpaid claims to SCIVIC in an attempt to avail itself of the protections afforded to lienholders under Texas law. *See* ECF No. 15 at 2–5, 10–13. SCIVIC further asserted that the business operations of Spark Canada and Spark Southwest are sufficiently integrated such that they should be considered a single entity for the purposes of this lawsuit. *See id.* at 7–8, 13–17. Although the Court did not ultimately reach the single business enterprise question, it noted that there was "significant overlap between Spark [Canada], as the parent company, and Spark Southwest, as a subsidiary." ECF No. 40 at 9.

In denying Spark Canada's motion to dismiss, the Court observed that the Spark entities had failed to "meaningfully distinguish" between Spark Canada and Spark Southwest in their interactions with SCIVIC in the periods leading up to both the execution of the Contract and the filing of this action. *Id.* Thus, although it was clear that the parties to the Contract—which was signed in Texas and concerned services performed exclusively in Texas—were subject to jurisdiction in this forum, at the pleading stage, it was not clear which Spark entity was in fact a

3

party to the Contract. *Id.* at 10. Resolving all conflicts between the jurisdictional facts in SCIVIC's favor, then, the Court concluded that SCIVIC had met its burden of establishing specific jurisdiction with respect to Spark Canada. *Id.* at 10.

Spark Southwest filed its First Amended Answer, Affirmative Defenses, and Counterclaim on July 14, 2021, asserting causes of action against SCIVIC for breach of contract, quantum meruit, unjust enrichment; against Toyota for foreclosure of Spark Southwest's Lien on the Project; and against both SCIVIC and Toyota for violations of various provisions of the Texas Property Code. ECF No. 18.[1] SCIVIC and Toyota now move to dismiss Spark Southwest's claims for breach of contract, quantum meruit/unjust enrichment, and foreclosure of its Lien on the Project, in addition to certain of Spark Southwest's claims arising under the Texas Property Code.[2] ECF No. 26; ECF No. 44.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] On October 18, 2021, Spark Southwest filed a Second Amended Answer, which restated but did not amend the Counterclaims filed on July 14, 2021. *See* ECF No. 54 at 1 n.1.

[2] The Counter-Defendants do not address Count 4 of Spark Southwest's Amended Counterclaim, which alleges that Toyota failed to furnish a description of the real property being improved in the Project within ten days after Spark Southwest's written request, as required under § 53.159(a) of the Texas Property Code. Nor do the Counter-Defendants address Count 7, Spark Southwest's claim against SCIVIC for violations of § 28.002 of the Texas Property Code, which required SCIVIC to pass along payment from Toyota attributable to Spark Southwest's work within seven days after receiving payment from Toyota.

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II. Analysis

### A. Breach of Contract

In Texas, a claim for breach of contract requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston 2005, pet. denied)). Spark Southwest has properly pled that it was a party to the Contract, that it tendered performance under the Contract by performing the electrical work for the Project, and that it has suffered damages due to SCIVIC's failure to pay Spark Southwest's invoices pursuant to the terms of the Contract. ECF No. 18 at 8–9, 16–18.

SCIVIC asserts that Spark Southwest's breach of contract claim must fail because Spark Southwest was not in privity with SCIVIC. ECF No. 26 at 10–12. Relying on the signature blocks to the purchase orders forming the Contract with SCIVIC, which were signed by "Spark Power Corporation," SCIVIC asserts that Spark Southwest was not a party to the Contract and cannot pursue a breach-of-contract claim as a third party. *Id.* However, as explained in the Court's order denying Spark Canada's motion to dismiss, it is not clear from the pleadings which Spark entity was a party to the Contract and the signature blocks are not dispositive of the matter. *See* ECF No. 40 at 9–10. Accordingly, it would be inappropriate at this stage to dismiss Spark Southwest's breach-of-contract claim for lack of privity with SCIVIC.

### (2) *Quantum Meruit and Unjust Enrichment*

Quantum meruit is an equitable remedy that does not arise out of a contract, but is independent of it. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Recovery under quantum meruit is appropriate when non-payment results in an unjust enrichment

6

to the party benefitted by the work. *Id.* To recover, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged; (4) under such circumstances as reasonably notified the person sought to be charged that the [counter-plaintiff] in performing such services was expecting to be paid by the person sought to be charged. *Id.* Similarly, a claim for "[u]njust enrichment occurs when the 'person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain.'" *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 667 (S.D. Tex. 2016) (quoting *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)).

Spark Southwest alleges that it provided SCIVIC with goods, materials, equipment, and services in connection with its performance of electrical work for the Project, that SCIVIC accepted the benefit of those services, but has refused to pay for them, despite Spark Southwest's reasonable expectation of payment. ECF No. 22–24. Spark Southwest further alleges that SCIVIC has been unjustly enriched in the amount of $1,486,564.16, the reasonable value of the benefit of Spark Southwest's goods, materials, equipment and services that SCIVIC has retained without payment. *Id.*

SCIVIC argues that Plaintiffs' claims for quantum meruit and unjust enrichment should be dismissed because Spark Southwest's claim for breach of contract bars recovery on these bases. While SCIVIC is correct that Spark Southwest cannot *recover* under both theories, Texas law clearly permits a party to plead both a claim for breach of contract and, in the alternative, equitable claims such as quantum meruit and unjust enrichment. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) ("A party to a contract may, however, seek alternative relief under

both contract and quasi-contract theories."); *Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex. Civ. App.—Corpus Christi 1980, no writ) ("there certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and quantum meruit"). In short, Spark Southwest's assertion of mutually exclusive theories of recovery is not a proper basis for dismissal of its claims for equitable relief at this early stage of the litigation.

### (3) *Violation of § 53.083 Texas Property Code*

Under Texas Property Code § 53.083, a claimant may make written demand for payment of a claim to an owner authorized to withhold funds under Subchapter D of Chapter 53 of the Texas Property Code. If the original contractor fails to give the owner written notice of its intent to dispute the claim within 30 days after receiving a copy of the demand, the original contractor is considered to have assented to the demand and the owner must pay the claim. Tex. Prop. Code. § 53.083(b).

Spark Southwest alleges that it provided notices of its claims and the amounts owed in letters to SCIVIC and Toyota dated December 15, 2020, January 13, 2021, and March 8, 2021, indicating that, if Spark Southwest's claims remained unpaid, Toyota could be personally liable and its property subjected to a lien. ECF No. 20. Nonetheless, "[u]pon information and belief," Spark Southwest alleges that SCIVIC failed to timely notify Toyota of its intent to dispute the claims. *Id.* at 21. Spark Southwest alleges that it never received a copy of any such notices from SCIVIC or from Toyota, despite requests for copies of the notices, and that SCIVIC's failure to send such notices constitutes an assent to Spark Southwest's demands. *Id.*

SCIVIC argues that this claim should be dismissed because it is conclusory, because SCIVIC did provide the required notice to Toyota on January 12, 2021, and because the deposit of the disputed funds releases Toyota from any liability in this action. ECF No. 26 at 5–6. Spark

Southwest responds that evidence of the notice is not properly before the Court on a motion to dismiss, and it is not clear that the notice complies with the requirements of the Property Code or that they address *all* of the demands for payment. ECF No. 28.

In support of its assertion that it properly notified Toyota of its intent to dispute Spark Southwest's claims, SCIVIC offers an email exchange between SCIVIC and Toyota representatives concerning Spark Southwest's intent to file a lien. ECF No. 26-7. While generally a court may not consider materials outside of the complaint in considering a motion to dismiss unless the motion is treated as one for summary judgment, FED. R. CIV. P. 12(d), the Fifth Circuit has recognized a limited exception to this rule and has held that documents attached to the motion to dismiss, referred to in the complaint, and central to the plaintiff's claims may be considered in evaluating a motion to dismiss. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The parties dispute whether the email exchange is "central to" Spark Southwest's counterclaim. However, the Court need not examine the contents of the email itself to determine that it is insufficient to defeat Spark Southwest's claim under §53.083. In its motion to dismiss, SCIVIC asserts that it "first notified Toyota that it disputed Spark Southwest's claim on January 12, 2021 – within 30 days of receiving the First Notice on December 15, 2020." ECF No. 26 at 6. Given that it occurred prior to either of the subsequent pre-lien notices issued on January 13 and March 8, 2021, the January 2021 email exchange cannot logically constitute a notice to Toyota that SCIVIC intended to dispute Spark Southwest's later demands. Accordingly, even if the January 2021 emails were sufficient notice of SCIVIC's intent to dispute the December 2020 claim under the Property Code, they would not extinguish Spark Southwest's claim under § 53.083 to the extent that it was based on its second and third pre-lien notices.

As for the "conclusory" nature of Spark Southwest's claim, the Court disagrees with SCIVIC's contention that the complaint does not offer enough facts to draw a reasonable inference that dispute notices were never sent. Spark Southwest requested copies of the notices and never received them, from either SCIVIC or Toyota. Indeed, SCIVIC's motion to dismiss itself strengthens the inference by failing to offer any reason to believe that SCIVIC disputed the pre-lien notices issued in January and March 2021. Construing these facts in the light most favorable to Spark Southwest, it is facially plausible that SCIVIC failed to timely and properly notify Toyota of its intent to dispute Spark Southwest's claims. *Iqbal*, 556 U.S. at 678.

SCIVIC suggests that Toyota has no liability because "all funds that Toyota was allegedly required to withhold pursuant to the notices were deposited in the registry of the Court." ECF No. 36 at 6. Section 53.084 of the Texas Property Code, "Owner's Liability," provides that:

> (a) Except for the amount the owner fails to reserve under Subchapter E, the owner is not liable for any amount paid to the original contractor *before* the owner is authorized to withhold funds under this subchapter.
>
> (b) If the owner has received a notice required by Section 53.056 or 53.057, if the lien has been secured, and if the claim has been reduced to final judgment, the owner is liable and the owner's property is subject to a claim *for any money paid to the original contractor after the owner was authorized to withhold funds under this subchapter. The owner is liable for that amount in addition to any amount for which the owner is liable under Subchapter E*.

TEX. PROP. CODE § 53.084 (emphasis added). Spark Southwest does not allege that Toyota has failed to reserve the disputed funds or that it continued to pay SCIVIC after being authorized to withhold funds (but before they were actually deposited). In its claim under Section 54.083, Spark Southwest seeks "*at least* $1,486,564.16"—the amount it claims to be owed after certain payments by SCIVIC—but offers no facts from which the Court could reasonably infer that it is entitled to any damages beyond the amount already reserved. Because Spark Southwest has failed to allege

10

that it is entitled to any damages under the statute beyond those that have already been withheld—and which can no longer establish a basis for Toyota's liability—Spark Southwest cannot plausibly state a claim under Section 53.083.

### (4) S*uit to Foreclose Lien*

SCIVIC asserts that Spark Southwest's claim seeking foreclosure of its lien on the Toyota Project must fail because the disputed funds have been deposited into the Court's registry pursuant to the Texas Property Code and because several of the lien notices were sent by the "wrong" party—Spark Canada, rather than Spark Southwest. ECF No. 26 at 6–10. The Court need not address whether the lien notices were valid, however, because the Lien—valid or not—has been removed in light of the deposit of the disputed funds into the Court's registry. *See* ECF No. 27.

Spark Southwest responds that the removal of the Lien does not release Toyota from liability or extinguish its lien foreclosure claim because § 53.162 of the Texas Property Code contemplates the revival of removed liens where a claimant "obtains a final judgment in the suit establishing the validity and ordering the foreclosure of the lien." ECF No. 32 at 7 (citing TEX. PROP. CODE § 53.162). As a practical matter, it is difficult to imagine any circumstances under which a lien could be revived where, as here, the lien was summarily removed because of fund-trapping, rather than as a result of some alleged procedural error in the lien filing. *See* TEX. PROP. CODE § 53.160 (setting forth the grounds for objecting to the validity or enforceability of a lien, including failure to furnish notice to the owner of the property or to submit an affidavit with the information set forth under Section 53.054). Indeed, the Court has not identified a single instance in which a lien has been revived after being summarily removed or a single case addressing Section 53.162 of the Texas Property Code. The Court will not devote any additional time to contemplating how Spark Southwest's lien might theoretically be revived under § 53.162, but will wait to address

the revival when the Texas Property Code suggests it is possible—after a final judgment in Spark Southwest's favor. For now, Spark Southwest's claim for lien foreclosure is dismissed for the simple reason that the lien no longer exists.

## CONCLUSION

For the reasons herein, the motions to dismiss filed by Counter-Defendant SCIVIC Engineering America, Inc. (ECF No. 26) and Counter-Defendant Toyota Motor Manufacturing, Texas, Inc. (ECF No. 44) are **GRANTED IN PART AND DENIED IN PART**. Spark Southwest's claims for violation of Section 53.083 of the Texas Property Code and for foreclosure of the lien on the Toyota Project are **DISMISSED**; all other claims against the Counter-Defendants survive.

It is so **ORDERED**.

**SIGNED** this 4th day of January, 2022.

	XAVIER RODRIGUEZ
	UNITED STATES DISTRICT JUDGE